Robert Lawrence Goldstein appearing for appellant, Donnie Lee appearing for appellee. Okay, I do not see Mr. Goldstein on my display. One moment, let me adjust this. There we are. Okay. Mr. Goldstein, would you like to reserve some time for rebuttal? Yes, your honor. I would like to reserve five minutes, please. Very good. Please go ahead. Thank you. Really, the key issue in this case is whether Mr. Sienega satisfied a law, a state law similar to a return prepared under Internal Revenue Code section 6020A. I think to answer that question, if we could just do it in one minute, is to compare 6020A, which is dischargeable in bankruptcy, versus 6020B, which is not. The key distinction is under 6020A, the taxpayer provides the documentation to the IRS and is sufficient for the IRS to prepare the return. Under 6020B, the IRS takes the tax information at its own disposal without any cooperation or instigation from the taxpayer, and the IRS prepares a substitute return based upon what it has available. Well, that is not the only difference, is it? I mean, there has to be consent from the taxpayer to prepare a return, and the taxpayer has to sign a return, right? Under 6020A, isn't that also true? I would actually disagree on both points. Number one, it's the consent to disclose the tax information. There's actually no consent that you have to show to ask the IRS to prepare, is to provide sufficient information, number one. Number two, to answer your question, actually, whatever the taxpayer is signing under 6020A is actually not a return, at least as defined under 523A1B, and the reason that we know that is because Congress and the Supreme Court Rules of Judicial Interpretation tell us it's not a return, because if it was a return, BAPCA would not have amended 523A to include the hanging paragraph to specify. Well, for the moment, I'm just talking about 6020A standing alone. I mean, doesn't that require the taxpayer to sign the return that the IRS prepares? Again, I don't call it, I think it's a misnomer to call it a return, at least as defined. Isn't that what the statute calls it? It does, and 6020B also refers to a return that is actually not a return. Why do you say it's not a return if the statute calls it that? Well, because, again, I don't think all returns are created equal, and I don't think Jackson, In re Jackson, for example, tells us that a document that the taxpayer does not provide the information, the calculations, doesn't perform those functions of preparing what is what we would call a traditional return. Jackson tells us that's not a return by definition. While we use the word return, and we're using that, I get it that the word return shows up, Jackson tells us that that document, even though we're calling it a return, is not a return to prepare the tax calculations, and the tax liability, and all the information that goes into a traditional tax return. Well, let me back you up one more step. I thought, and maybe I'm misunderstanding this, but I had thought in your brief, you were taking the position that the information that the taxpayer, Mr. Sienega, turned over about the federal adjustments was a return, not a 6020A return, but a return. Am I misunderstanding that? Yes and no. That's one of our arguments. I was alternatively pleading. I really think, in my opinion, that this case comes down to whether there is a similarity to 6020A, because again, under 6020A, the taxpayer provides the information. The FTB's own notice of proposed assessment states on the notice of proposed assessment itself, they prepared that assessment based solely upon, and this is basically their quote, based solely upon the records Mr. Sienega provided, meaning the FTB, unlike under 6020B, had no information whatsoever to prepare a return at all. Without Mr. Sienega's initiation of process, as I like to refer to it, the state had nothing. They admitted that in 2007, and they admitted on their notice of proposed assessment that they didn't take any outside information, so, and I don't mean to be glib about this, but the state basically is seemingly ungrateful in that they received everything from Mr. Sienega. Well, you know, it would have been kind of nice for Mr. Sienega to actually file a return. They're entitled to be ungrateful for the failure to file a regular return, right? It would. There's no doubt. But again, the code, bankruptcy code at least, again, allows for discharge when the return is late. That's what 6020A exists for, and allows when the taxpayer initiates a process. I think really what it comes down to is the intent of the code, and to me, discharge should be granted when the taxpayer is the one who initiates the process, when the debtor initiates the process, because that's really the honest taxpayer. It's who initiates process, and again, it's the unfortunate taxpayer, or debtor, I should say, that should receive discharge, but the honest one, and again, at a time when the state had nothing, nothing at all, it was Mr. Sienega who stepped up to the plate, provided everything, just like 6020A allows. Well, let me stop you. He did not provide everything. I mean, come on. What he provided was some information that was relevant to a correction of a federal return that is not remotely like a state tax return. I mean, I understand that there are some outs here, and there are some conveniences that the tax code, the federal tax code, and to a much more limited extent, I think the state tax code have provided, but to suggest that's the same thing as a return is several bridges too far. So help me get where you want me to be. Thank you. I wasn't suggesting that it was equivalent to a return at all. What I'm suggesting is the documentation on its face, which is what is sufficient for the FTE to prepare a tax assessment. That's what 6020A requires. It requires information sufficient to prepare a tax assessment. That's not quite right either, because it's not a tax assessment. It's a tax return, right? And did the information he provided contain all the information that would have been in a tax return? It would have been, it was all the information sufficient, it's quote, necessary for the preparation thereof. It's not that it's actually prepared, but it's necessary, I'm just quoting, disclose all information necessary for the preparation thereof. It doesn't say you have to actually prepare the return, because obviously. And I understand that, but my point is, did he provide all the information that would be necessary to prepare a return as opposed to an assessment? Yes, because the notice of proposed assessment actually details the income. It details the tax exemption, it details the tax liability, it details what is owed. So everything that's on that notice of proposed assessment is actually self-proving that it was sufficient to prepare a return, because at the end of the day, the FTB was able to prepare a tax assessment based upon all that information. So they had to have sufficient information as if it was a return. Now, the reason that the state doesn't prepare a return, unlike the IRS, is simply because for the state to obtain a legal assessment, the California code requires that the franchise tax court issue a notice to the taxpayer, not a return. If the state required a return, believe me, the state would have sent him a return just like 6028, but state law doesn't allow it. State law doesn't allow the assessment to go final unless they give that notice. But if state law doesn't provide for the preparation of the return, how is the state law similar to 6020A, which is key to the preparation of a return by the IRS? Again, two things. One is, again, what the taxpayer must provide is not the, well, again, what's initially submitted is the information sufficient to prepare a tax return, not an actual return. That's what Jackson basically is pointing out. And second is, again, I know we're calling it a return, but a return prepared pursuant to 6020A is a term of art. And that term of art, whatever that document is, I don't know if there's a name other than that legal term of art, but it's not a return as we call a return. And Jackson tells us why. It's because the IRS prepares it, not the taxpayer. And the same thing here. The FTV prepared it. There's no doubt about it, the FTV prepared the notice assessment, but the IRS prepares a return under 6020A just the same. There's no difference. The taxpayer initiates process under both state and federal law. The state, the FTB, and the IRS both prepare, are the ones who prepare the tax calculations. And the mechanism, conduit to the assessment, sure, that's a little different. Again, state law requires a notice of proposed assessment. The IRS requires the taxpayer to sign what, again, is still not a return because it's a return prepared pursuant to 6020A. And again, that's not a return. And the intent behind that between federal and state law is the exact same, which is at the end of the day, we have a legal assessment. Nobody is stating, especially not the FTP, that the debt included in the bankruptcy was not a valid assessment. And the fact that it's valid proves that it was sufficient to prepare a return and make a tax assessment. And it proves that the intent behind 6020A, which is to get the IRS to have a valid assessment, exists here. Well, a 6020B assessment, or an assessment following from a 6020B process, is a valid assessment, right? Oh, yes. But let me read 6020A just real quick. The secretary shall make such return, again, the word return is used, but it's not a return. This is under 6020B, from his own knowledge and from such information as he can obtain through testimony or otherwise. The key is, under 6020B, his own knowledge, which is... No, I understand that difference. I'm just saying that both of those processes end up in an assessment. Yes, but that's true in both 6020A and 6020B, both use the word return. And again, we know both are not returns. Okay, you're down to about five minutes if you want to reserve this to be a good time for you to stop. Thank you. I would. Okay. All right. Thank you. Mr. Lee, please go ahead. Yes, good morning. And may it please the court. My name is Donnie Lay, counsel for the appellee, the California Franchise Tax Board. Just add one legal point to add to this discussion that we just had about IRC 6020A. And in the case of in Ray Green, which I believe both parties cited to in their brief, it says the IRS, with the cooperation with the taxpayer, fills out a return, usually in the form of a 1040, and the taxpayer signs a return. That information I got from in Ray Green, and I think that is why IRC 6020A is included in the hanging paragraph of 523A1. So with that said, I have a few practical points that have already been raised by the judges here, but I'd like to add to them. The first one is that Mr. Cienega mentioned several times that he's cooperated by filing reports and that without those reports, FDB would have no other information on him. The reality is, is that that just amplifies the fact that our tax system relies on prompt and honest self-reporting by taxpayers. And that starts with the filing of the return, which Mr. Cienega failed to do. Certainly there will be situations where a tax agency will have no information on a taxpayer. However, that does not stop those taxpayers from filing their returns, assessing taxes on themselves, and otherwise complying with the law anyway. Another point I'd like to make is that the standard advanced by Mr. Cienega simply permits a catch-me-if-you-can approach to tax compliance. Mr. Cienega admitted that he was required to file tax returns, never filed those returns. Those returns are now at least 25 years late, and it was only after the IRS completed its examination against them, did he report anything to FDB. So surely a taxpayer who does not file a timely return and who submits no information at all, or only after the IRS has gathered the relevant information, undermines the self-assessment tax system. So, essentially imagine if every taxpayer did what Mr. Cienega did, that would certainly turn our tax system on its head. The last practical point I'd like to make is that the reality is the information that was provided by Mr. Cienega only gave FDB a glimpse or a sliver into his larger tax picture. That is, when the IRS makes a change or adjustment, that can simply represent one additional source of income or one transaction amongst many others that were not previously disclosed. So yes, Mr. Cienega reported certain changes that permitted FDB to assess some tax against them, but until he files an actual return, the amount of the entire tax and the proper amount of that tax cannot be determined. So yes, if... Well, it's my recollection from my time in practice that when situations like this arise, I think this is true, the IRS, I'm not so sure about the FDB, basically what they do is they make an assumption and they make the worst case assumption for the taxpayer with respect to missing information. Is that roughly true? Yes, there are some assumptions to be made, but that just simply allows FDB to assess some tax against the taxpayer, and that's certainly better than no tax at all, but it's not as good as all the tax. So yes, there is some assumptions, but it's not the complete picture, and certainly that complete picture isn't verified under penalty of perjury. Your point is it's not the complete picture, but for the IRS being vigilant, you would have known nothing. Exactly. And that's what our entire system is about. You come forward with everything you got in a return, and there's certainly a lot of taxpayers out there that perhaps are sole proprietorships, operate in cash or have cash payments, and we would have no information at all with respect to those taxpayers, but they still go ahead and file their tax returns and pay their fair share of taxes. So essentially, with that, you know, Mr. Cienega was required to file a return. His reports were not returned, and thus his tax debts are exempt from discharge. None of Mr. Cienega's arguments have been accepted by the lower court, and this panel should reject them as well, and for these reasons, I respectfully request that this court affirm the bankruptcy court's lower ruling that was made in FDB's favor. Thank you. Thank you very much. Any further questions from the panel? Thank you. Okay, good. Mr. Goldstein, you've got five minutes and a few seconds, I think. Thank you. First, I'd like to point out that the code specifically requires a similar state law. It seems to me from your initial questions, you're looking for something, an exactitude, and then there's not. The fact is, there's four things that are required in this case. Debtor submits, or a taxpayer submits their tax information. We have identical matching, number one. Number two, the IRS and FTB prepare a tax assessment based upon that information. We have an exact match. Three, yes, it's not a return, but they send a document for the taxpayer to sign, but it's just a mechanism or conduit to number four, which is to get the IRS to have a legal assessment. So three out of the four requirements of 6020A are satisfied, and if we look at, is this similar to 6020A or similar to 6020B, it's only similar, excuse me, to 6020A, because the taxpayer provided the tax information. The FTB even admits they relied upon it. This is completely dissimilar to 6020B because the FTB admits they did not rely upon their own information to prepare this. Number two, I'd like to just point out as a direct response to my colleague's arguments that most of his arguments, frankly, are tax arguments. We're here at the bankruptcy court under the bankruptcy code, which is to allow a fresh start. It's not about paying your fair share because, obviously, in bankruptcy, you're not paying at all. That's the purpose of a bankruptcy. So to argue that, I think, is something on the tax side, not on the bankruptcy side. This catch-me-if-you-can argument or issue is really not a bankruptcy question. That's more of a tax question, meaning if the state felt Mr. Cienega was avoiding something or wasn't reporting everything, they had the right to audit him. They had the right to criminally prosecute him. By really submitting these tax documents and this information, it was done under a penalty of perjury. And had the state not believed it was accurate or believed that he wasn't reporting everything, they had the right to audit him. But, again, that's a tax question. The issue is all the debt that's listed in this bankruptcy, 100% of it results from exactly what Rudy is providing. If there's something the state believes he didn't provide, they have the right to audit it, and it wouldn't be discharged in this bankruptcy if they want to make an assessment. But the code specifically brings in non-bankruptcy law to determine what is a return, right? I mean, it says in the hanging paragraph that it's defined under applicable non-bankruptcy law. So there's not, I don't think, a clean distinction between the tax law and bankruptcy law. If anything, tax law would prevail with respect to this question, whether he complied to get a discharge of his tax debts. Yes, but I agree with that. But, again, I think two things. One is you have to realize that these tax years from 1990, the early 1990s, Mr. Sienega literally provided everything that was available to him. He simply did not have all the records from 19, but it's true. It may be true, but he should have filed a return when he had the information. But that's not a standard for discharge. Otherwise, we're eliminating the two-year rule under 523A1B2, which is recognizing that a return can be late. There's nothing in the bankruptcy code that says you can't file a return 20, 30 years late. But he never filed a return in the conventional sense, right? That's correct. I mean, a return which most people would recognize. So even the two-year rule doesn't save him, correct? No, but the 60, well, it does in that it's still, if a return prepared pursuant to 6020A is allowable for discharge, it still has to meet the two-year period. Again, I think we're, I understand that it's hard because we're using the word return and we're using it loosely. Even 6020B uses the word return, and we know it's not a return. So I think the key is to really use the word return prepared pursuant to 6020A and to see do we have a return prepared pursuant to 6020A under a similar, not identical, but a similar state law. And again, really, you know, what's frustrating in a way is, you know, we're supposed to basically read very narrowly exceptions to discharge by the party objecting. So to me, the question is really not, you know, why is it dischargeable? Why is it not? And again, if we look at 6020A, return, I should, let me use the phrase, return prepared pursuant to 6020A. We have three of the four criteria, and the one that's not exact, again, everything, three of the four are exact, okay? The one that's not is because the state requires the notice, not a return. That's for the state purposes. But the intent behind the issuance of a notice of a proposed assessment and the IRS issuing a return is the exact same, which is to get a legal tax assessment. So basically, again, I think really the key is, does the state, in this case, is the fact pattern similar to 6020A or 6020B? Because I think it's got to be similar to one. And again, it's not similar to 6020B because the FTB didn't use information on its own knowledge. It's not the FTB's own knowledge from which this was prepared. The FTB admits it was based upon Rudy's own submission. It's clearly in response to the information that was disclosed by the taxpayer. And again, that, if you look at the entire code and the amendments in BAPCA, and what it allows, what it disallows, what it allows is the reward goes to the instigator. The reward goes to the party. Okay. You've exhausted your time. Thank you very much. Thank you, Mr. Lay. The matter is submitted. We'll provide a written decision in due course. Thank you very much. Thank you. Madam Clerk, please call the next case.
judges: Faris, Lafferty, Spraker